This is DACA 23-4101 and I'll give you a minute to get collected and when you're ready, please proceed. Good morning. May it please the court. Good morning. My name is Michael Banks. I'm appearing on behalf of the appellant, Alejandro Juarez, in this matter. My intention is to reserve three minutes time rebuttal. Rule 12b-6 motions should only be granted if a claimant fails to state a claim upon which relief can be granted. In this case, the district court erred because it treated Hudson's Rule 12b-6 motion as essentially a Rule 56 motion or a declaratory relief action and made a determination on the ultimate merits of the case. Didn't you attach the insurance policy to the petition or to the complaint? Yes. So that's appropriately considered at the motion-to-dismiss stage. I didn't really understand what your complaint was. Why would you suggest this is a summary judgment level decision when you attached the insurance? Yeah. The question of fact in the underlying case is multiple, but among one is whether or not there ultimately would have been coverage or whether this exclusion would have applied. But this is a fair point, but beyond that, back to the standard of the Rule 12b-6 motion, if a plausible cause of action has been pled on its face, then the motion should be denied. Here, in this case, the complaint alleged a cause of action for the breach of a contractual duty to defend and not just a failure in its duty to identify. There's a cause of action for breach of contract for the duty to defend. And the district court erred because it conflated the two concepts of duty to identify and duty to defend. Utah case law treats those two contractual duties completely separately. And what the district court did is analyze the exclusion and reached a determination that the exclusion would have applied to vitiate the duty to identify without providing a proper analysis of whether a plausible claim for breach of contract on the duty to defend had been alleged. And it had. Well, there's no duty to defend if there's absolutely no coverage, right? Under Utah law, that's incorrect. Utah law treats the duty to defend as being much broader than the duty for coverage. And the insurance contract in question here also is broader than the duty. The duty to defend portion is broader and not subject to the exclusion of the duty to identify. On page four of Hudson's brief, Hudson summarizes fairly the contractual, the insurance contract as the duty to defend. It writes, the company shall have the right and duty to defend any suit against the insured seeking damages by reason of selling, serving or giving alcoholic beverages, even if the allegations of the suit are groundless, false or fraudulent. What's the first paragraph of the liability coverage? It is. And that's and it is. That is correct. But also the duty to defend is treated separately and apart from the coverage indemnity duty as well. So you're suggesting that the the reason or by reason of the selling, serving or giving of any alcoholic beverage defines the duty to defend? Correct. And whether or not there's ultimate liability depends on other circumstances. Exactly. And Utah law is very clear. And in the estate of Thurgolson case, 2001 Utah 48, paragraph 22, the court held an insurance duty to defend is broader than its duty to indemnify. And to this point, an insured may have a duty to defend even if the insurer is ultimately not liable to indemnify. Did you receive a reservation of rights letter from the insurance company? No. Did anybody file a declaratory judgment action? No. And that's particularly problematic because the case law that's set forth in the briefs holds that, you know, specific case. If you're presented with a claim that creates potential liability under this, you've got to file a motion for declaratory relief or defend under reservation of rights. And treat that duty to defend. It's a fiduciary duty. You've got to do that. And recently... What is the effect of not doing either of those? Well, under Utah law, it's very interesting because the courts in Utah take so seriously the public policy of requiring insurers to meet their duty to defend. The courts say, well, if you don't do that, if you don't seek declaratory relief, if you don't defend under reservation of rights, then we will hold that there's coverage by estoppel, which is one of our causes of action in the underlying... In other words, they waive any contract defenses. Correct. Because Utah law and policy take seriously this bargain for protection, this bargain for defense. You're not just bargaining for indemnification. All litigants or business owners would expect, oh, man, if there's a claim brought against me, I'm going to have to shell out serious money to pay for defense. I'm put in a really bad spot. And so when somebody's buying insurance in Utah, they're buying indemnification and they're buying a defense. And so to the point of our case, a plausible cause of action violating the duty to defend, breaching the duty to defend, was CLED. Could you, just for a minute, you mentioned that there was no reservation of rights letter, but you assumed this claim from Quantum. Correct. So they first filed, the action was first filed against Quantum, and Quantum sought coverage from its insurer, which is Hudson, and Hudson denied coverage. Quantum then settles, and there's this consent judgment. But I wonder if, since you only assumed whatever rights Quantum had, perhaps that had already taken place. It had not. It's in there. We also, part of the assignment is we get all of the facts here. And I would say, first, just to kind of clarify the question a little bit, it wasn't that Quantum denied coverage that was the problem, or that Hudson denied coverage.  They denied the defense.  They denied the defense, which is a separate duty, and that harmed Quantum, and that is our cause of action against Hudson, is that denial of a defense. Not the denial of coverage. That's separate. But by denying the defense, you can get coverage by a stopper, but they denied the defense, and that harmed Quantum, because Quantum had to hire counsel, was facing a million dollar recovery, which, by the way, is under the Utah Alcoholic Product Liability Act. The damages against Quantum were limited because, specifically, this case was brought under what this policy was to protect. There was no assault or battery claim pled in the original complaint. Everything about the underlying lawsuit had to do with the over-service to selling of alcoholic products. Why is that important on the duty to defend? It's important because Utah case law says, well, when we look at triggering the duty to defend, we compare policy language with the underlying complaint. In this case, the policy was all about this alcoholic, selling alcoholic products, and the complaint was all about the provision of alcoholic products, not about recklessness or assault, battery. It was specifically brought with a cause of action, which under Utah law is very specific. It's statutory. It was brought under Utah's Dram Shop Act. Well, of course, though, the problem with your brief is you never address the full language of the exclusion, which says this insurance does not apply to claims arising out of an assault or battery, whether caused by or at the instigation of or omission by the insurer. Why isn't that exactly how this claim arose, by an omission of the insured, which was either maybe the failure or an action by the insured, which was the over-serving? Why didn't it arise out of the over-serving of alcohol or the failure or the omission of cutting this person off? That exactly fits the language of the policy. And the arising out of never gets mentioned in your brief, but that's the important part of the exclusion. It arises out of the serving or giving of alcohol to somebody who shouldn't have gotten it. Correct. Now, how you calculate damages down the road is a totally different issue. Yeah. So to address Judge Moritz's question and then Judge Kelly, I wouldn't say that I would disagree that there's a problem with the brief, because that question leads to the same kind of conflation that the district court did in determining coverage. And all that's at issue here today, it's not a determination of coverage. It's whether or not a cause of action, a plausible cause of action, had been filed against Hudson for its breach of contractual duty to defend and not just limited to coverage. And under Utah law, the duty to defend was triggered by fact of bringing a lawsuit that filed it. So as we look through the Utah cases, those two things are treated very separately. And the district court erred because we pled a plausible cause of action on that duty to defend portion. Meaning that you didn't plead an assault and battery? Meaning that our actions in the federal courts now is a breach of contract for failure to defend. And that defense obligation under the contract is triggered by the lawsuit. Utah treats duty to defend very differently from duty to identify. The case law is very clear in Utah on that. Well, had the complaint said that Rocky struck the victim and caused all of these damages outside the bar after he was served too much alcohol, then would you fault the district court? Or is it that the piece that you're faulting the district court on is that it picked that fact out of somewhere else? We would still fault the district court for that because here, again, the duty to defend is triggered, even if ultimately there's no coverage. The duty to defend is triggered by the potential here, the potential claim. And, you know, there's been a lot of talk in this case about the Deragier case from the Ninth Circuit. We understand that that's a limited, it's not a precedential value. But it is strong evidence, strong evidence that there was a potential for coverage in this case and that there was a potential. How was there a potential for coverage if you interpret that exclusion, which is a legal question, the way that the district court did? Yeah.  If you're looking at the relationship between Hudson and Quantum, Hudson, the very same insurer, had on the same policy, same exclusion, same set of facts in Deragier, identical, had a court hold that it had a duty to cover that case, that it had a duty to identify, that it had a duty to defend. And so potential is the word. Was there potential? If you're Hudson and you're looking at this, is there potential that there may be coverage? We have— Is there—so you're saying the potential is that a court would interpret it differently? The potential is, in the Deragier case, the court held that they—yeah. In the Deragier case, the Ninth Circuit case, the complaint sounded in negligence. Our complaint sounded in negligence. In fact, our case is stronger because it sounded—the causes of action in our complaint were the violation of the Utah Product Liability Act, which is what this policy— No, but the arising out of part of it. There's no question here that the bar patron committed assault and battery against the plaintiff. There's no question about that here. And you pled that. I see that my time is up. Please answer. We did not plead that. That was not pled in the complaint. The causes of action were product liability and negligence. The complaint never pled assault and battery. It pled that, to Judge Kelly's question, because Rocky was over-served and became visibly intoxicated by the over-service, that is what—that is how this case arrived. That he did what? That he went out into the parking lot and struck Ms. Horace, but it's not— And that's the part of it that is the intentional. We would have to answer the questions that are intent, and the underlying complaint just wasn't about assault and battery. It's not even pled in the underlying complaint. And that's why the duty to defend was triggered, because it was all under the Utah Product Liability Act. If there are no other questions, thank you for your time. Thank you. Thank you. Good morning. May it please the Court. Thomas Rollins on behalf of Hudson Specialty Insurance. Your Honor, we're here to ask you to uphold the District Court of Utah's granting of our motion to dismiss. Well, I have a question on that. What does the policy— Even if any of the allegations in the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim as they deem expedient, et cetera, that doesn't have anything to do with the ultimate question of whether there is coverage. It has to do with, it seems to me, to be the duty to defend. And is it correct that Hudson never sent a reservation letter, never sought a declaratory judgment action, and that it was cut off at the pass by the 12B6 motion? Yes, Your Honor. And the cause of action, again, was not for assault and battery. Maybe damages were calculated or would have been calculated based on the injuries. But that's far down the road. Yes, Your Honor. I believe I understand your question, and it's going to take some unwinding because there's many legal principles that apply to the proposition that you've set forward. So first, going back to Alf v. State Farm, it's a seminal Utah Supreme Court case from 1986. It starts with the proposition that insurance is a contract between an insurer and a purchaser of insurance, and certainly there are some certain fiduciary duties that arise out of that. But whether the policy of insurance applies is a question of law. And if the terms and conditions within that policy are unambiguous, then it can be treated as a question of law. And so the first proposition is yes, that first paragraph in the policy of insurance establishes the coverage territory. That means nothing, then, is what you're telling me. No, Your Honor. Well, if they still have to defend even if the allegations are groundless, it seems to me they have to defend even if they think the allegations are groundless. If I can answer that question in two parts, Your Honor. Answer in as many parts as you want. The first would be that the coverage territory, whether or not the allegations are groundless, goes to kind of the Rule 11 sanctions, that someone files a totally frivolous complaint, that these facts didn't even happen, that the allegations are figurative or imaginary. So that if that happened, they could just ignore it, and a default judgment could be entered against the insurer regardless. No. If a frivolous imaginary plaintiff files a complaint against an insurer that falls within the coverage territory under that provision in the opening statement, then there would be a duty to defend unless there is an exception. So even if it was imaginary and groundless? I'm sorry, Your Honor. Even if it was imaginary, they would still have a duty to defend? Yes. And why not a duty to defend for having served when they shouldn't have served? And when you calculate the damages to, not to the individual, but to the company, that we then get into the assault and battery issue. It is because of the second part of that opening statement, the coverage territory, that states to which this insurance applies. And then the policy goes on to identify the certain portions to which the insurance does not apply. Well, indemnity doesn't apply. But it doesn't address whether the duty to defend doesn't apply. Your Honor, I'm thinking of apples and oranges. If you read the entire portion of the coverage territory as a whole, it provides that... The company shall not be obligated to pay any claim or any judgment or to defend any suit after a clerical limit. The company's liability has been exhausted by payment of judgments or settlements. Shall be legally obligated to pay as damages because of injury to which this insurance applies. That doesn't affect the duty to defend. We argue that it does because... Okay, that's the question then. The injury to which this insurance applies is later defined as excluding injuries arising out of assault and or battery. But the assault and battery, that's where I'm hung up right now. Because I don't have the complaint in front of me, but I do know that it alleged, as a direct and proximate result of serving intoxicating alcoholic beverages to Rocky Manateo, plaintiff was severely injured, suffering economic and non-economic damages, period. No assault and battery. Did the district court reach outside of the complaint to fill in that gap and say, aha, what your complaint really is is an assault and battery? No, Your Honor. The district court did not do that. The district court did not do that for several reasons. First, the question is whether or not when coverage in the duty to defend was denied, except the four corners of the original complaint filed against, or the original complaint filed against the insured. And in that original complaint filed against the insured to which the denial was made, the factual allegations, no matter how you color them under which legal theory, was an assault and battery. And that's, that differentiation, that distinction between pleading a legal conclusion and pleading a plausible legal claim kind of misses the force for the treaties because the purpose of the pleading standard is to put the party on notice of what are the underlying facts I'm being accused of so I can understand what factual legal defenses I have to those allegations. And so the District of Utah in the Essex Insurance versus Wake Up 2 case, which I believe was a Judge Kimball case from, I don't want to guess the year, but it was, I believe, the 10s or the 18s, the teens sometime. The district court in that case goes through and very clearly analyzes why, even if a complaint doesn't use the words assault and battery, that does not preclude a district court from applying the exclusion. And I want a quote from that case. Well, you could apply the exclusion, but don't you have to develop the case? Don't you have to defend your insured and make that argument and see what develops? I mean, you just cut it off at the, oh, that doesn't apply. Bang, gone. And now you're on your own, insured. So under Utah law in 2018, Utah Supreme Court, and Utah law is being applied in this case, ruled that in Paragraph 21 of that complaint, we've never held an insurer must defend against all third-party liability claims that could conceivably fall within the insurance coverage, nor have we considered whether an insurer may, consistent with its fiduciary obligations, stay the underlying proceedings until the dispute over coverage is resolved, nor in our view have we squarely repudiated any role for the fairly debatable standard. And then if you look at the concurrence in part of that decision, Justice Durham goes into more detail exploring this third-party duty and what's required and what's not required. It doesn't sound like the Supreme Court definitively laid down any rule. They said they haven't done it, and the concurrence may have wished they had. So the concurrence cites to a 1986 Utah case in Paragraph 49, Deseret Federal Savings and Loan Association versus U.S. Is that cited in your brief? The Altman's case is, and I believe we do cite directly to the concurrence. The case you're reading from right now. Yes, Fire Insurance Exchange versus Altman's. And in the concurrence of that case, they cite to the Utah 1986 case that says that the duty arises when the insurer has obligated itself to defend the insured in the insurance contract when there is sufficient factual basis for potential liability of a covered incident. The duty to defend is broader than the duty to identify, but the insurer's obligation is not unlimited. And so really what we're looking for is what are the factual allegations alleged, and first we find, yes, the factual allegations when you compare the four corners of the policy of insurance to the four corners of the claim fall within that original coverage territory. However, there's exclusions to that coverage territory, and the exclusion in this case is number six, salt and battery exclusion, which is it excludes all injuries arising out of an assault and battery. And that arising out of language in Utah law and other jurisdictions is very broad. It's swiveled from, originated from, derived from. And so when we have four corners of a complaint saying that the damage arises from this person being over-served, from not being cut off, from not being removed from the premises, and then ultimately striking another patron. All right, but where does that part come in? You said the original complaint says that he struck her. So the complaint filed against Hudson by Ms. Juarez, incorporated by reference to the underlying complaint. And the underlying complaint, which is originally the plaintiff argues, triggered this duty to defend when Ms. Juarez sued the insurer, the Quantum Ultra Bar. And so when you look at both, the complaint underlying this appeal and the original complaint underlying the assignment, both clearly set forth the basis for the claim. Now, when you use the word complaint, what are you talking about? Are you talking about within the parties or are you talking about to the court? I am referencing a formal pleading filed with the Third District of Utah. All right, and in the formal pleading complaint, it says assault and battery or describes that the plaintiff was struck. It describes that the plaintiff was struck. Do you have it handy? Can you read it? Actually, Your Honor, I do not have it handy. Okay, understood, understood. But it's incorporated by reference. In our opening brief, we identified some of the operative allegations from that. And the operative allegations are in the record, Volume 1. Would it be different if the plaintiff had alleged a claim for assault and battery against the assaulter and batterer and the establishment? It would be different in the sense that the assaulter, Rocky Manitow, he may have applicable insurance that could cover the claim. He may have assets that could pay for his conduct. But he is a distinct individual separate from the insurance quanta motion. And he's not even a party to this case? No. And what would be distinct, though, Your Honor, is if Ms. Juarez slipped and fell and, you know, broke her leg or twisted her ankle because she had been over-served. Or suppose a guy ran out of the woods with his bat and hit her on the head with a bat and had never even been in the establishment. That certainly would not be covered. Correct. And so there'd be no claim against the establishment. Correct. And it was their parking lot. That's right, Your Honor. I do have the original complaint in front of me. And I assume you're talking about there's quite a number of paragraphs describing the patron who was intoxicated, the plaintiff's request that he be removed because he was harassing her and grabbing her. He grabbed her several times. She continued to complain. He continued to be served. Eventually it does say, I think this is a paragraph you're talking about, that when they tried to leave the club, this individual followed her to a car and in the parking lot struck her in the face, causing severe facial and dental injuries. Yes, Your Honor. Is that what you're referring to that was incorporated in the second complaint? That is, Your Honor. And is that what Judge Shelby relied on? I would have to go back to the oral ruling made by Judge Shelby, but it was undisputed, and I believe it's undisputed today, that it was pleaded that the real basis for the suit is that an over-served patron who was now removed struck Ms. Juarez in the face, causing injury. And just as a final thought, Your Honors, this exact same exclusion has been upheld by the First Circuit and the Eleventh Circuit. The Doe v. Hudson specialty case from 2018, I believe, is very informative and provides a good legal analysis and basis of why the exclusion applies. It is unambiguous, and the motion to dismiss should be upheld. Thank you, Your Honor. Thank you. We sure can. Can I give counsel just one minute, though, to respond? You are out of time, but I want you to have a minute, and if there are questions that carry past that, then more, but otherwise we'll hold you to the one minute. Yes, Your Honor. Thank you, Your Honors. And finally, with that, we just wish to emphasize that Utah law treats very differently. I mean, we've had it, but treats very differently the duty to defend versus the duty to identify or coverage or the exclusion. And so there is, at least at a minimum, you know, at a minimum, what has been pled in this case is a plausible claim for breach of contract based on Hudson's breach of its duty to defend. And because a plausible claim has been pled, the district court should be reversed and the matter should be remanded. So, thank you. All right, thank you, counsel.